[Cite as *State v. Holloway*, 2012-Ohio-4936.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   97906

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICKEY R. HOLLOWAY

DEFENDANT-APPELLANT

---

## JUDGMENT:
AFFIRMED IN PART,
REVERSED IN PART, AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-550299

**BEFORE:**  Boyle, P.J., Sweeney, J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   October 25, 2012

**ATTORNEY FOR APPELLANT**

John P. Parker
988 East 185th Street
Cleveland, Ohio   44119


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Daniel T. Van
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Mickey Holloway, appeals his sentence, raising the following two assignments of error:

> I. The trial court abused its discretion and erred as a matter of law under the Fourteenth Amendment of the federal Constitution by ordering the Probation Department to supervise the appellant as a sex offender when he was convicted of a non-sex offense.
>
> II. The appellant's status as a sex offender under ORC 2950 must be vacated because he has not been convicted of a sex crime, was not notified in open court of any requirements under ORC 2950 and did not agree to any of the requirements of ORC 2950.

{¶2} Although we find no error in the community controlled sanctions imposed by the trial court, including Holloway's supervision under the sex offender unit, the trial court has no authority to label Holloway as "a Tier sex offender"[1] and require him to report as a sex offender. We, therefore, find some merit to the appeal and reverse that portion of the trial court's order that labels Holloway as a sex offender. But we otherwise affirm Holloway's sentence with respect to the community controlled sanctions imposed.

<u>Procedural History and Facts</u>

{¶3} Holloway was indicted on single counts of rape, gross sexual imposition, and kidnapping, all carrying a sexually violent predator specification. The alleged

---

[1]The trial court stated in the sentencing journal entry that "defendant is now a Tier sex offender."

victim was Holloway's 9-year-old stepdaughter, who subsequently recanted after reporting the incident that gave rise to the indictment. Pursuant to a plea agreement reached with the state, Holloway subsequently pleaded guilty to an amended indictment of aggravated assault, a fourth degree felony. The trial court accepted Holloway's guilty plea and found him guilty on the single count of aggravated assault. The court then ordered that a presentence investigation report ("PSI") be prepared prior to sentencing.

{¶4} At the sentencing hearing, the trial court gave defense counsel the opportunity to address any of the information contained in the PSI. Defense counsel stated that Holloway wanted to reunite with his family and that Holloway's wife, the alleged victim's mother, was supporting him. Notably, however, defense counsel never objected to the recommendation contained in the report that Holloway be placed in the sex offender's unit if placed on probation.

{¶5} Defense counsel further emphasized that the victim recanted her allegations on more than one occasion to more than one person. He further explained that after the Department of Children and Family Services became involved, the family received counseling for approximately one year and was reunited. But after the indictment was filed, Holloway was split from his family again and pleaded guilty to put this case behind him and reunite with his family as soon as possible. Defense counsel urged the trial court to impose community controlled sanctions with the appropriate supervision, acknowledging that Holloway needs alcohol treatment.

**{¶6}** Conversely, the prosecutor addressed the court, explaining that the plea agreement was reached because the state did not want to have to impeach the victim — an 11-year-old girl — at trial. The prosecutor, however, pointed to the physical evidence that existed corroborating the victim's story — specifically Holloway's DNA, and emphasized that this was the second report by the same victim. The prosecutor urged the trial court to impose strict conditions upon Holloway if it opted not to send him to prison.

**{¶7}** The trial court ultimately sentenced Holloway to 60 days in the county jail, followed by a period of two years of community controlled sanctions. As part of Holloway's community controlled sanctions, the trial court ordered that Holloway submit to a sex offender assessment, complete sex offender counseling, and be subject to polygraph examinations as recommended by the treatment team.

**{¶8}** The journal entry sentencing Holloway also stated that he was labeled "a Tier sex offender" and must therefore comply with the reporting requirements.

**{¶9}** Holloway now appeals his sentence.

<u>Community Controlled Sanction</u>

**{¶10}** In his first assignment of error, Holloway argues that the trial court abused its discretion in imposing sanctions, "treating him as sex offender," when such sanctions were unrelated to the crime for which he was convicted, i.e., aggravated assault.

**{¶11}** R.C. 2929.15(A)(1) vests the trial court with discretion to impose any condition of community control sanctions it deems appropriate. *State v. Talty*, 103 Ohio

St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201. In *Talty*, the Supreme Court of Ohio adopted a test to determine the reasonableness of community control conditions. Under the test, courts should consider whether the condition "is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *Id.* at ¶ 12. However, the community control conditions cannot be overly broad so as to unnecessarily impinge upon the offender's liberty. *Id.* at ¶ 13. We review the trial court's imposition of community control sanctions under an abuse-of-discretion standard. *Id.* at ¶ 10.

{¶12} Holloway argues that the trial court's sentence contravenes the second element of the *Talty* test because aggravated assault is not a sex offense.

{¶13} Contrary to Holloway's unsupported assertion, we find that the trial court's sentence relates to the underlying facts giving rise to the conviction. Indeed, the only allegations giving rise to the indictment involve a sex offense as set forth in the PSI, which the trial court specifically considered before sentencing Holloway. The trial court further followed the recommendation contained in the PSI to place Holloway under supervision in the sex offender unit if a prison term was not imposed. The mere fact that a defendant reaches a plea agreement for a lesser offense does not mean that a trial court should disregard the underlying facts giving rise to the indictment and ultimate conviction. Here, the trial court's requirement that Holloway be supervised in the sex offender unit was appropriate given the underlying facts. Aside from the victim

reporting the incident, the state further indicated that it had some DNA evidence connecting Holloway to the offense. Indeed, this is not a case where the sanction is so overbroad or completely unrelated to the facts giving rise to the conviction. *Compare Strongsville v. Feliciano*, 8th Dist. No. 96294, 2011-Ohio-5394.

{¶14} Further, sentencing courts must consider the purpose of sentencing before imposing any sentence, which include (1) protecting the public from future crime by the offender and others, and (2) punishing the offender (using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources). R.C. 2929.11(A). "To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.*

{¶15} Here, the conditions imposed as part of the community controlled sanction comport with this principle and achieve the sentencing goals. Indeed, as part of Holloway's supervision in the sex offender unit, Holloway will be required to submit to a sex offender assessment and possibly a polygraph examination. He was also ordered to successfully complete sex offender counseling. All these measures not only protect the public, including his step-daughter (the victim), but they also aid in rehabilitating Holloway while adequately punishing him for the offense. We find no basis to conclude that the trial court abused its discretion in this case.

{¶16} The first assignment of error is overruled.

## Sex Offender Label

**{¶17}** In his second assignment of error, Holloway argues that the trial court erred in labeling him a sex offender and requiring him to report as a sex offender. The state concedes the error, noting that the trial court never mentioned sex offender registration during the sentencing hearing but that the journal entry wrongly reflects otherwise. We sustain the second assignment of error. Upon remand, we order that the trial court vacate that portion of Holloway's sentencing order.

**{¶18}** Judgment affirmed in part, reversed in part, and case remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

JAMES J. SWEENEY, J., CONCURS;
KENNETH A. ROCCO, J., CONCURS IN JUDGMENT WITH
SEPARATE OPINION

KENNETH A. ROCCO, J., CONCURRING IN JUDGMENT:

{¶19} Although I am constrained to agree with the majority's disposition of this appeal, I write separately to express my concern regarding what occurred in this case. The defendant was originally indicted on charges of rape, gross sexual imposition, and kidnapping, all carrying a sexual violent predator specification. As part of a negotiated plea bargain, the first count of the indictment was amended from rape to aggravated assault. The defendant was permitted to plead guilty to a charge of aggravated assault under R.C. 2903.12(A)(1), and the remaining counts were nolled.

{¶20} The original indictment was based on an incident of alleged sexual abuse involving the defendant's 9-year-old stepdaughter. During a police interview conducted the day of the alleged incident, defendant's stepdaughter told police that, at approximately 2:00 a.m., she awoke to the defendant touching and licking her vaginal area. She pulled her pants and panties up, but the defendant pulled them down again and pulled her close to him, rubbing her buttocks. The record indicates that the victim initially told her sister about the incident at school and, with her sister's encouragement, later told a teacher about the incident, who contacted social services.

{¶21} DNA evidence corroborated the victim's allegations. This was the second incident in which the defendant had allegedly engaged in this type of conduct with the same victim.

**{¶22}** R.C. 2903.12(A)(1), aggravated assault, provides, in pertinent part: "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause serious physical harm to another * * * ."

**{¶23}** The record is incomplete.   However, it is virtually impossible to imagine a circumstance in which a 9-year-old girl could have "by serious provocation * * * incite[d]" her stepfather "into using deadly force" within the meaning of R.C. 2903.12(A)(1).   Certainly no such facts exist in the record.

**{¶24}** Under Crim.R. 7(D), a trial court may amend an indictment "in respect to any defect, imperfection, or omission in the form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." Here, the trial court erred in amending the first count of the indictment from rape under R.C. 2907.02(A)(1)(b) to aggravated assault under R.C. 2903.12(A)(1) because the amendment "changed the name or identity of the crime charged."   Crim.R. 7(D).

**{¶25}** However, in *State v. Rohrbaugh*, 126 Ohio St.3d 421, 2010-Ohio-3286, 934 N.E.2d 920, the Ohio Supreme Court held   that "[a] defendant may plead guilty to an indictment that was amended to change the name or identity of the charged crime when the defendant is represented by counsel, has bargained for the amendment, and is not prejudiced by the change."   *Id.* at syllabus.    The court held that under such circumstances, error in amending the indictment "is not reversible plain error, because

there was no miscarriage of justice." *Id.* at ¶ 7. As this case aptly demonstrates, this can result in a defendant pleading guilty to an offense that is highly implausible — if not impossible — under the alleged facts.

{¶26} I appreciate the inherent difficulties in cases involving young victims and the concerns and challenges presented by a (now 11-year-old) recanting witness. However, I question whether justice and the public interest were served by the state in this case in agreeing to accept the defendant's guilty plea to a lesser offense in the amended indictment that he could not have possibly committed based on the alleged facts. This is not a case in which the only evidence against the defendant was the victim's statement. According to the transcript from the sentencing hearing, there was other "strong" evidence against the defendant, including Department of Children and Family Services' records and DNA evidence supporting the victim's allegations, which, as the trial court acknowledged, "is rare in these cases." Cases are certainly prosecuted with less evidence.

{¶27} Accordingly, it is with great reluctance that I concur in the majority's opinion.